NOT FOR PUBLICATION

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
:
ANGELO RICCARDO CAPALBO,          :
                                  : Civil Action No. 13-3291 (RMB)
            Petitioner,           :
                                  :
      v.                          :
                                  :        **OPINION**
 J. HOLLINGSWORTH,                :
                                  :
            Respondent.           :
_____:

**BUMB, District Judge:**

   This habeas matter comes before the Court upon Petitioner's submission of his application to prosecute his civil rights challenges in forma pauperis. See Docket Entry No. 9. For the reasons detailed below, Petitioner's application will be denied, and he will be directed to show cause as to why he qualifies for in forma pauperis. As set forth below, Petitioner may be permitted to prosecute his civil action: (a) upon prepayment of the filing fee (or upon duly showing cause as to why he qualifies for in forma pauperis status in that action); and (b) upon submission of an amended pleading stating a plausible claim in light of the guidance provided to Petitioner infra.

I.   BACKGROUND

   The proceedings in this matter commenced on May 28, 2013, when the Clerk docketed Petitioner's application styled as a

habeas petition executed pursuant to 28 U.S.C. § 2241.[1]  See
Docket Entry No. 1.  The habeas application asserted that
Petitioner, who has been having extensive medical problems and
who has been provided with extensive medical treatment, was
recently prescribed a certain surgical procedure but that
procedure was suddenly denied to him for non-medical reasons, and
said denial posed a grave danger to Petitioner's life.  See id.
at 8 (Petitioner's application raising, simultaneously and
somewhat cryptically, negligence challenges framed in medical
malpractice terms and, in addition, a claim asserting a challenge
of constitutional magnitude, that is, that the said denial of the
prescribed surgery would result in Petitioner's "death").

Six days later, Petitioner submitted the $5 fee applicable
to habeas actions.  See Docket Entry dated June 3, 2013.

Albeit Petitioner's challenges presented a range of de facto
civil rights challenges that could be litigated only under Bivens
v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971), see
Preiser v. Rodriguez, 411 U.S. 475 (1973); Cardona v. Bledsoe,
681 F.3d 533 (3d Cir. 2012); Leamer v. Fauver, 288 F.3d 532, 542
(3d Cir. 2002), this Court – taking Petitioner's assertion (that
he was facing imminent death) at face value, directed Respondent

---

[1] Petitioner, a federal inmate confined at the FCI Fort Dix, submitted the application at bar without the filing fee applicable to habeas petitions and without providing the Court with his in forma pauperis application.  See Docket Entry No. 1.

2

to file an affidavit and evidentiary record verifying that neither Petitioner's life nor his health was in imminent danger, and reserved its determinations as to all other aspects of the case at bar. See Docket Entry No. 2.

Respondent duly complied, see Docket Entry No. 3,[2] providing the Court with evidence indicating that: (a) Petitioner has been receiving extensive and systemic medical treatments; and (b) no medical treatment, moreover no prescribed medical treatment, has been denied to Petitioner for non-medical reasons (and Petitioner was in no imminent danger of any kind). See Docket Entries Nos. 3-1 to 3-4.[3] In response, Petitioner filed a letter stating that certain unspecified "mail [that Petitioner] intended to use in [his traverse] ha[d] been denied to [him]," and requesting an order directing that Petitioner "be given [that unspecified] mail."[4] Docket Entry No. 7.

---

[2] In accordance with the Court's mandate, Respondent filed the directed submission within five days from the date of entry of the Court's order. See Docket Entry No. 3. That submission, which included the required affidavit and was accompanied by a well-detailed summary and voluminous exhibits (reflecting Petitioner's extensive record of medical treatments), totaled 190 pages. See Docket Entries Nos. 3 to 3-4. The Court thanks Respondent for the prompt and thoughtful submission.

[3] Respondent also correctly noted that Petitioner's challenges were of a Bivens rather than a habeas nature.

[4] Therefore, the Court has no certainty that Respondent's submission docketed in this matter was served upon Petitioner.

3

Upon careful examination of the affidavit and record submitted by Respondent, this Court satisfied itself that neither Petitioner's life nor his health was in imminent danger. See Docket Entries Nos. 7 and 8. Correspondingly, the Court found it warranted to return this matter to the track it should have been on ab initio. Therefore, the Court advised Petitioner that his civil rights challenges could have been entertained only in a Bivens action. See id. In conjunction with the same, the Court advised Petitioner of his obligation to either prepay the $400 filing fee associated with a civil rights action or to duly obtain in forma pauperis ("IFP") status. See Docket Entry No. 7, at 9 and n.1; see also Docket Entry No. 8. Moreover, since the submission made by Respondent: (a) provided the Court with no basis to conclude sua sponte that Petitioner's civil rights might have been violated; and, hence (b) left this Court guessing whether Petitioner would be interested in commencing a civil rights matter altogether, the Court found it premature to direct Petitioner's filing of an amended pleading operating as a civil complaint. See Docket Entry No. 8.

Apparently misconstruing this Court's observation (that Petitioner may commence a Bivens action upon properly prepaying the filing fee or duly obtaining IFP status) as this Court's finding that Petitioner actually has a viable civil rights claim, Petitioner submitted his IFP application in this habeas matter.

See Docket Entry No. 9, at 3, 6 (showing that, within the last six months, Petitioner received $3,000 in monetary gifts deposited on his prison account, and $2,138 of that amount remained available for payments of Petitioner's expenses).

The IFP application arrived accompanied by Petitioner's statements that: (a) his "claims [were] of substance," even though he did not know the "critical facts" of those claims; but (b) he wished to conduct "cross-examination" of unspecified individuals to determine facts showing that Respondent's submission contained some unspecified "conflicting evidence"; and (c) in connection with those endeavors, Petitioner was seeking appointment of pro bono counsel in order to "identify" the proper defendants to be named in his civil rights pleading and to detect and state "the facts showing the deliberate indifference [on the part of those yet-to-be-identified defendants] to [Petitioner's] medical needs." Docket Entry No. 9, at 1. In other words, Petitioner conceded that, as of now, he had no facts to support a viable claim.

II. *IN FORMA PAUPERIS* APPLICATION

Section 1914, the filing fee statute, provides, in relevant part, that "the [C]lerk . . . shall require the [plaintiff] . . . to pay a filing fee of $ 350 except [in] a writ of habeas corpus

the filing fee shall be $ 5."[5]  28 U.S.C. § 1914(a).  The accompanying provision, Section 1915, governs applications filed IFP and provides, in relevant part, that leave to proceed IFP may be granted in any suit to a litigant "who submits an affidavit that includes a statement of all assets such [litigant] possesses [if such affidavit demonstrates] that the [litigant] is unable to pay such fees."  28 U.S.C. § 1915(a)(1); see also Smith v. Bennett, 365 U.S. 708, 712 (1961) ("[W]hile [$5.00] is . . . an 'extremely nominal' sum, if one does not have it . . . the fee might as well be [$5,000]"); Clay v. New York Nat'l Bank, 2001 U.S. Dist. LEXIS 3209, at *1 (S.D.N.Y. Mar. 21, 2001) (same).

Therefore, the grant of IFP status is trusted to the good faith discretion of the federal judiciary.  Reflecting on the same, the Supreme Court clarified that one need not be *absolutely destitute* to qualify for IFP status.  See Adkins v. E. I. DuPont De Nemours & Co., Inc., 335 U.S. 331 (1948).[6]  Here, however,

---

[5]  Effective May 1, 2013, if a litigant prepays the filing fee, an additional $50 administrative fee shall be submitted for a total of $400. See http://www.njd.uscourts.gov/sites/njd/files/ AdminFee_0.pdf ("Effective May 1, 2013, pursuant to Judicial Conference Policy, all federal courts will begin charging a new $50 administrative fee for filing a [c]ivil [a]ction . . . in addition to the $350 filing fee for a total of $400").

[6]  In Adkins, the plaintiff filed a timely motion in district court requesting leave to appeal the district court's decision and stated, in her affidavit, that she was a widow of 74 years of age, that the estimated cost of her record on appeal was $ 4,000, that all she owned was a house inherited from her husband which had been appraised at a value of $ 3,450, and her

6

Petitioner is an inmate whose living expenses, including housing, food, clothing, medications, etc. are provided by the prison authorities and, thus, it does not appear that his minimal needs would be left unsatisfied unless he utilizes his funds. Thus, it does not appear that prepayment of the filing fee, especially if that payment would be equal to less than one-fifth of his current funds, would be too burdensome for Petitioner within the meaning of the Adkins test. Correspondingly, the IFP application fails to qualify Petitioner for IFP status. However, out of an abundance of caution, the Court will allow him an opportunity to show cause as to why prepayment of the filing fee, equal to less than one-fifth of his funds, would be so burdensome to bring him within the standard articulated and exemplified in Adkins.

II. SUBSTANTIVE DISCUSSION

Since Petitioner's submission of his IFP application suggests his interest in commencing and prosecuting a Bivens action, the Court finds it warranted to summarize the governing

---

only source of income was a small rent from the parts of her home without which she would not be able to purchase even the barest necessities of life, such as food. The district and appellate courts refused to grant the plaintiff IFP status because she had not mortgaged her home to raise money toward her litigation, ruling that the plaintiff had to contribute her last dollar to the cost of litigating the suit. The Supreme Court reversed and ruled that a plaintiff need not be absolutely destitute before allowing to proceed IFP; rather the plaintiff has to establish to the satisfaction of the district court's good faith discretion that the payment of the fee would be unduly burdensome in light of the minimal necessities of life unique to each plaintiff.

pleading standard and substantive test applicable to the claims Petitioner is seemingly striving to allege.

   A.   THE PLEADING REQUIREMENT

The Supreme Court detailed the standard for summary dismissal of a complaint in Ashcroft v. Iqbal, 556 U.S. 662 (2009), where the Court examined Rule 8(a)(2) of the Federal Rules of Civil Procedure stating that a complaint must contain "a short and plain statement of the claim showing that the pleader is *entitled* to relief." Fed. R. Civ. P. 8(a)(2) (emphasis supplied). The Supreme Court held that, to prevent a summary dismissal, a civil complaint must now allege "sufficient factual matter" to show that the claim is facially *plausible as pled*, since only such pleading "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted).[7]

Thus, the Court is obligated to disregard any conclusory allegations proffered in the complaint. See id. at 201-11. For

---

   [7] Plausibility "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 545 (2007)). Therefore, when the facts pled only suggest a "mere possibility of misconduct," they necessarily fail to show that the plaintiff is entitled to relief. Fowler, 578 F.3d at 211 (quoting Iqbal, 556 U.S. at 679).

8

example, the Court should ignore legal conclusions or factually unsupported accusations which merely state that "the-defendant-unlawfully-harmed-me" or bold self-serving averments that the plaintiff has a viable claim. See Iqbal, 556 U.S. at 678 (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). In the same tune, a plaintiff's *promises* to plead a viable claim (based on a hope that the facts might be determined upon discovery) cannot be *pled* in lieu of plausible, already known facts.

> [T]he question of sufficiency of pleadings does not turn on the discovery process. See Twombly, 550 U.S.] at 559. The plaintiff is not entitled to discovery where the complaint alleges any of the elements "generally," i.e., as a conclusory allegation, since Rule 8 does not allow pleading the bare elements of the cause of action and affixing the label "general allegation" in hope of developing facts through discovery.

In re Synchronoss Secs. Litig., 705 F. Supp. 2d 367, 394 (D.N.J. 2010) (quoting Iqbal, 129 S. Ct. at 1949-54) (original brackets and ellipsis removed).

B.  THE EIGHTH AMENDMENT TEST

A Section 1983 action applies only to state actors, it is not available to federal prisoners. The federal counterpart of the same is a Bivens action alleging deprivation of a constitutional right. See Brown v. Philip Morris, Inc., 250 F.3d 789, 801 (3d Cir. 2001) ("A Bivens action . . . is the federal equivalent of the § 1983 cause of action against state actors, [it] will lie where the defendant has violated the plaintiff's

9

rights under color of federal law"); see also Tavarez v. Reno, 54 F.3d 109, 110 (2d Cir. 1995) (the elements of a Bivens claim are: (a) "that a defendant acted under color of federal law"; and (b) "to deprive plaintiff of a constitutional right").[8]

For the purposes of Eighth Amendment challenges asserting denial of medical care, the Court must determine whether the asserted facts show: "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate *deliberate indifference* to that need." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 582 (3d Cir. 2003) (emphasis supplied); see also Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999); Estelle v. Gamble, 429 U.S. 97, 103 (1976); White v. Napoleon, 897 F.2d 103, 109 (3d Cir. 1990); Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987).

An inmate's disagreement with medical professionals "as to the proper medical treatment" cannot support an Eighth Amendment claim. See Lanzaro, 834 F.2d at 346. Likewise, an allegation that a doctor or medical practitioner was negligent cannot state a claim of constitutional magnitude. See Estelle, 429 U.S. at 106. At most, "it is medical malpractice" not cognizable in constitutional review. Id. at 107. Moreover, a medical

---

[8] But see Corr. Servs. Corp. v. Malesko, 534 U.S. 61 (2001) (the scope of review and ensuing availability of causes of action under Bivens is narrower and more limited than under § 1983).

practitioner's disagreement with another medical practitioner's professional judgment (or with the inmate's self-diagnosis or the inmate's opinion as to the needed or preferred treatment or tests) is not actionable. See Napoleon, 897 F.2d at 110; see also Gatewood v. Hendrick, 368 F.2d 179 (3d Cir. 1966), cert. denied, 386 U.S. 925 (1967); accord Alsina-Ortiz v. Laboy, 400 F.3d 77 (1st Cir. 2005) (a doctor's failure to respond to certain request for services by the inmate, in context of the doctor's continued and regular services, did not deprive the inmate of a meaningful treatment); Ford v. Lane, 714 F. Supp. 310 (N.D. Ill. 1989) ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment"); cf. Jones v. Lockhart, 484 F.2d 1192 (8th Cir. 1973) (allegations of mere differences of opinion over matters of medical judgment fail to state a claim); Hyde v. McGinnis, 429 F.2d 864 (2d Cir. 1970) (a difference of opinion between physician and patient cannot sustain a claim under § 1983); Goff v. Bechtold, 632 F. Supp. 697 (S.D. W. Va. 1986) (denial of preferred course of treatment does not infringe constitutional rights). Hence, allegations of brief delays in treatment, denial of preferred treatment or tests, negligent or unsuccessful medical treatment, medical malpractice, etc., fail to state a plausible claim giving rise to a viable § 1983 or Bivens action, especially if the record shows continuous treatment of and attention to the litigant's medical needs.

C. LEAVE TO AMEND

At this juncture, Petitioner offered this Court no factual allegations stating a plausible Eighth Amendment claim. All he has offered was his bald assertion that he was facing imminent death, but that position was shown meritless by Respondent's submission. Thus, while this Court cannot rule out that Petitioner, if allowed an opportunity to file an amended pleading, might state a plausible Eighth Amendment claim within the meaning of <u>Iqbal</u>, read in conjunction with the substantive test detailed <u>supra</u>, the Court, as of now, has no basis to conclude that Petitioner's challenges state such a claim. Hence, Petitioner will be allowed to detail the facts of his challenges, if any, in light of the guidance provided to him herein. <u>See</u> <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 114 (3d Cir. 2002); <u>see</u> <u>also</u> <u>Foman v. Davis</u>, 371 U.S. 178, 182 (1962) (leave to amend is freely given).

The Court, however, stresses that Petitioner should not misconstrue this leave to amend as dispensing with Petitioner's obligation to state the *actual facts* of the alleged constitutional wrongs he suffered, if any, and to identify the *actual* wrongdoers, if any, personally implicated in those wrongs. <u>Cf.</u> <u>In re Suprema Specialties, Inc. Sec. Litig.</u>, 438 F.3d 256, 276-77 (3d Cir.2006) (a plaintiff must assert all the essential factual background that would accompany "'the first paragraph of

12

any newspaper story' — that is, the 'who, what, when, where and how' of the events at issue") (citations omitted). It follows that Petitioner's generic references to his warden, in the warden's capacity of a supervising officer, shall not be repeated in the amended pleading, since such references cannot sustain a viable claim. "A defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of respondeat superior." Solan v. Ranck, 326 F. App'x 97, 100-01 (3d Cir. 2009), cert. denied, 558 U.S. 884 (2009) (quoting Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (internal quotations omitted)). A civil complaint must allege the actual "conduct, time, place, and person responsible." Id. (quoting Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005)); see also Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior").

III. APPLICATION FOR APPOINTMENT OF *PRO BONO* COUNSEL

Finally, the Court takes notice of Petitioner's request for appointment of counsel made in conjunction with Petitioner's expression of hope that such counsel might discover facts enabling Petitioner to state a viable claim.

As explained supra, Petitioner is not entitled to discovery, be it conducted pro se or through counsel, if such discovery is

sought in hope to detect whether Petitioner has a viable claim to plead.  Accord In re Ins. Brokerage Antitrust Litig., 2007 U.S. Dist. LEXIS 25632, at *119 (D.N.J. Apr. 5, 2007) (citing In Re Silicon Graphics Sec. Litig., 183 F.3d 970 (9th Cir. 1999), for the observation that, without examination of the actual facts pled, the court cannot distinguish a sufficient complaint from a boiler-plate "fishing expedition"), aff'd, 579 F.3d 241 (3d Cir. 2009).  Accordingly, Petitioner is not entitled to appointment of counsel at this juncture, be it for the purposes of discovery or any other purposes preceding this Court's findings that: (a) Petitioner stated a plausible claim; and, in addition, (b) the claim is such that it warrants appointment of pro bono counsel.

In determining whether to appoint pro bono counsel, the Court must consider the litigant's financial circumstances, his ability to present his case, the complexity of the legal issues involved, the need for extensive discovery, and the likelihood of credibility determinations or expert testimony, etc.  See Tabron v. Grace, 6 F.3d 147 (3d Cir. 1993)).  Thus, this Court could give a consideration to appointing counsel only if an *indigent* plaintiff actually states a *plausible* claim entailing the aforesaid complexities.  See id. at 156 ("'Before the court is justified in exercising its discretion in favor of appointment, it must first appear that the claim has some merit in fact and

law'") (quoting, inter alia, Maclin v. Freake, 650 F.2d 885, 887 (7th Cir. 1981)).

Here, Petitioner has neither established his indigence nor stated a plausible claim. Moreover, it appears that there is little, if any, discovery needed in light of Respondent's filing of 186 pages of Petitioner's prison and medical records. And, while Petitioner's medical history might be complex, the legal issues implicated here are well-settled and straight-forward. At this juncture, appointment of counsel would be both premature and at odds with both the letter and spirit of Tabron. Such appointment will be denied.[9]

III. CONCLUSION

For the foregoing reasons, the Court will direct the Clerk to commence a new and separate Bivens matter for Petitioner. With regard to such new and separate Bivens matter, Petitioner will be denied IFP status; however, he will be allowed an opportunity to show cause that prepayment of the fee would be unduly burdensome for him in light of his minimal life necessities. Petitioner's statement filed in this matter jointly with his IFP application will be construed as his original Bivens complaint; the so-construed original complaint will be dismissed

---

[9] Such denial will be without prejudice to renewal of Petitioner's application in the event Petitioner forms a bona fide belief that such appointment might be warranted in light of the guidance provided to Petitioner in this Opinion.

for failure to state a claim upon which relief can be granted. Said dismissal, however, will be without prejudice to Petitioner's submission of a timely amended complaint naming the proper defendants, if any, and stating Petitioner's facts, if any, that amount to a plausible constitutional claim in light of the guidance provided to him supra.

Mindful of Petitioner's statement that he was not provided with certain unspecified mail, this Court will liberally construe that statement as suggesting that Respondent's submission, docketed in this matter as Docket Entries Nos. 3, 3-1, 3-2, 3-3 and 3-4, might have not been served upon Petitioner. Thus, Respondent will be directed to serve the same upon Petitioner and file an affidavit of service (or file an affidavit verifying that such service was already executed).[10]

An appropriate Order follows.

                                        s/Renée Marie Bumb
                                        **RENÉE MARIE BUMB**
                                        **United States District Judge**

Dated: December 19, 2013

---

[10] Out of an abundance of caution, this Court, acting sua sponte, will direct the Clerk to seal Docket Entries Nos. 3-1, 3-3 and 3-4, in light of Petitioner's medical records contained and/or discussed therein. The same records will be filed in the civil action that would be commenced for Petitioner.